On August 2, 2016, at room number 577, the people of the state of Illinois presented at the meeting the Anthony J. Maples, defendant of the country. On behalf of the defendant of the country, Mr. H.L.T. McAllister. On behalf of the plaintiff at the meeting, Mr. Ivan Alvin Taylor, Jr. Both sides ready to proceed? You may proceed when you're ready. Good morning, your honors, counsel, and may it please the court. My name is April Quintala and I represent defendant appellate Anthony Maples on behalf of the office of the state appellate defender. The issue presented in this appeal is whether Mr. Maples' conviction for tattooing the body of a minor must be reversed because the state failed to prove each element of the offense beyond a reasonable doubt. The evidence was insufficient in this case for two reasons. First, the state failed to present any evidence that Mr. Maples was not licensed to practice medicine in all its branches. Was that his burden? Was that the state's burden to prove that? Yes, your honors. Or was that an element of the offense? Yes, your honors. It's Mr. Maples' position that the licensure language in the tattooing the body of a minor statute is in fact an element of the offense and the state thus bears the burden of proving it. The rule in Illinois is that where an act is made criminal with exceptions embraced in the enacting clause creating the offense so as to be descriptive of it, the state must allege and prove that the defendant is not within the exception so as to show that the precise crime has been committed. The exception at issue in this case is embraced in the enacting clause of the statute as opposed to elsewhere in the same section or in a different part of the act. And it is descriptive of the offense. That exception has been part of the description of the offense since the statute was originally enacted in 1963, long before the legislature added the exemptions set forth in subsections D and D-5 in 2006. So like People v. Lobsher and unlike People v. Tolbert, this case presents a situation in which there is no statutory provision which explicitly states whether the exception was intended to be an exemption rather than an element. And the exception appears only in the enacting clause of the offense. Although the location of an exception within the statute is not alone determinative of whether it is an element, that the exception is embraced in the enacting clause creating the offense and that the legislature has specifically set forth certain exemptions elsewhere in the statute and is evidence of the legislature's intent to treat that exception as an element of the offense rather than an exemption from it. So subsections D and D-5 are specifically exemptions because of the way that they're worded. They say when the portions of the statute that describe the offense, subsections A and B, do not apply. So conversely, subsection A does not include that sort of language. The do not apply language is only in those subsections D and D-5 creating the exemptions. How do you distinguish the, is it Fiumetto case? Fiumetto. Fiumetto case. Yes, Your Honor. Fiumetto and People v. Brace on which Fiumetto relied involved offenses which criminalized possession of substances which were per se unlawful or items which were per se unlawful. So if you contrast that with a case like Laubscher, that involved an offense where the possession of a firearm is only criminal under certain circumstances, such as those described in the enacting clause in the statute. Let's go back to the Fiumetto case. They have a list of persons that were accepted from liability. Yes, Your Honor. Fiumetto did list certain persons that were accepted from liability. However, this case involves an exception for a status of individual as opposed to certain persons. So one of the best ways, I think, to think about the language in this statute is by a comparison to a similar statute. So if you look at, for instance, the home invasion statute, there's language in that statute that's very analogous to what we see here. So in the home invasion statute, it accepts from liability any person who is not a peace officer acting in the line of duty. So that statute begins, a person who is not a peace officer acting in the line of duty commits a home invasion when? The statute at issue here says a person other than a person licensed to practice medicine in all its branches commits tattooing the body of a minor when? So instead of saying except, it says other than. Right. In the home invasion statute, it says who is not. So there is an exception being created. Right. It's meant to accept someone from the operation of the statute. Right. But it's a status that's being accepted, a status of a person who holds a medical license, like a peace officer acting in the line of duty. So the not a peace officer element, like the medical licensure element, is one of status. It's not merely meaning to withdraw certain persons. It's a whole group that has achieved a certain status under the law. So I think that also speaks to the legislature's intent. So when we're talking about whether the state has to allege and prove an element of the offense, if the exception is descriptive of the offense, it must be negative in order to charge the defendant. I think that part of this is the legislature demonstrating an intent to shield certain groups from being subjected to criminal charges anytime they engage in certain conduct. So where a peace officer acting in the line of duty might be exposed to a home invasion charge anytime they enter a dwelling in such a manner as would otherwise qualify as a home invasion charge. There's an exception built into the statute that says, no, this particular group, the status of people, is going to be accepted from liability and they're not going to be exposed to criminal charges anytime they do this conduct. Like a doctor. Exactly. Like a physician. So it is true with people who hold a medical license. I think it's also analogous to the situation in Perestalski where the absence of the medical license is similar to the absence of a physician's certificate. It's not this group of people who have certain characteristics. It's a group of people who have attained a certain status, have certain paperwork, so to speak. So it's a very fine line. But I think where you draw the analogy between the cases that have found that it is an element to the offense that must be proven by the state and cases which have not, I think that they are distinguishable in that status sense, as well as in the sense that, again, Fiametto embraced those cases are dealing with a criminalization of a substance or an item that is unlawful per se. Just having it is unlawful. And then they carve out additional exceptions. Doesn't Fiametto, though, kind of tell us that you're going to look at whether or not it's descriptive of the offense? So how is the term other than a person licensed to practice medicine in all its branches, how is that descriptive of the offense? Well, it's describing, isn't it more of an affirmative offense? No, Your Honor. It's describing that this offense, a defendant can only be guilty of this offense if he does not possess a license to practice medicine in all of its branches. It's the inapplicability of the exception that makes the offense a crime. It's not unlawful for someone who possesses such a license to offer to tattoo someone who's under the age of 18. That person is not going to be exposed to criminal charges by merely offering to tattoo someone when they possess that license. So the statute, rather than creating that as a separate exemption as it does elsewhere in the statute, it's built into the statute to protect this particular status of individuals and protect them from being criminally charged. That's most analogous to the situation we see in the home invasion statute, for instance, or in the portion of the statute discussed in Appellas and Elliman and Karstolsky. It's different from the statutory language that we see in Fiametto and Brace. So when we're looking to what was the legislative intent, the analogy is sometimes the best evidence we have of how that is intended to play out, what the legislature intended to do by creating that language to insulate the certain status of people from liability or being charged. And as a practical matter, this is not a situation where it's uniquely within the defendant's knowledge whether they possess a medical license. Go back. Say that again. Practically, this is not a factor that would be uniquely within the defendant's personal knowledge. It's not something that would be hard for the state to find out. It wouldn't present any particular burden on the state to have to verify whether a person has a medical license. How would the state do that? Very simply, Your Honor, by getting a certified record from the Illinois Department of Financial and Professional Regulation. The same way as a state would prove that a person does not have a driver's license in a driving while license revoked case, by contacting the Secretary of State and getting this- But isn't that a description of the offense, driving while license revoked or driving while license suspended? That is a big part of the offense. That's a description of the offense as is set out in the Meadow case. This is not a description of the offense. So it's not like the state has to prove this guy is not a doctor. That's an exception, isn't it? Isn't it the burden on the defendant to say, hey, wait a minute, I'm a doctor. You can't charge me under this offense. No, Your Honor. The driving while license revoked statute requires that a defendant be driving on a highway and not have a driver's license, that it be either revoked or suspended. That's the whole premise of the crime, correct? So to here, a person cannot be guilty of tattooing or offering to tattoo someone under the age of 18 unless they do not have a medical license. It's similarly descriptive. And the state would prove the lack of a driver's license the same way the state would prove the lack of a medical license by going to the regulatory board in Illinois, the regulatory body that has those records. And that's not always been the case. But in modern days, everyone who has a license to practice medicine is kept track of by the state in the same way as everyone who has a driver's license is kept track of by the state. So it doesn't place any serious burden on the state to have to negate this particular element. So it's also distinguishable from cases where we're talking about a person's age and whether they had 20 hypodermic syringes that they purchased from a licensed pharmacy or what have you. It's not something that's uniquely within the defendant's knowledge. It's easily available information to the state by going to that regulatory body. Do you think in most of these cases when someone's charged with tattooing somebody that the only way you could figure out they're not a doctor is through a medical license? I'm sorry? Do you think there are probably other ways you could figure out they're not a doctor other than not having a medical license? Just an aside. It's not important, but... They're not having a medical license. Well, they're not going to find out if they have a medical license. It's probably clear. I don't know, Mr. Maples. But my guess is he's probably not a doctor, right? Well, Your Honor, there's no evidence in the record saying one way or another. So I wouldn't speculate as to that. And finally, with regard to this first evidentiary shortfall, because Section 12C-35 is a penal statute, it must be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. Just one point, I suppose, that the statute speaks of a person not being a physician licensed under the laws of this state or of the state where he resides. I suppose that then may require you to search more than one state, wouldn't it? Well... Wouldn't you have to search all 50 states? Not necessarily, Your Honor. I mean, if the question is where the person resides, then you would search the state in which he resides. How do you find out where he resides? You can't ask him. Well, if a person... Did you search all 50? I'm sure wherever you sent the summons would probably be a good indication of where the person resides. And in this case, I don't... Well, residing in residence is two different things. You can be licensed in any state and still practice in another state. It doesn't require you to be licensed in Illinois to be charged in Illinois. Well, the way the statute reads, Your Honor, is that the only thing that you're required to be is licensed to practice medicine in all the branches. As to the specific parameters of that or where the person resides or where they may be licensed, the statute doesn't speak to what additionally might be required for that. So if the state shows that you've not licensed to practice medicine in Illinois, is that sufficient proof? Does the burden then shift to the defendant to say, yes, but I'm licensed in Connecticut, I'm licensed in Florida? It could, I suppose, Your Honor. But, again, it's analogous to a situation in which a person's driving without a valid license. I mean, the state would go about proving this particular licensure the same way as a driver's license. It doesn't necessarily matter whether a person has a valid license in another state. Whether it's valid in Illinois is the operative question in that type of situation. It's very different from this situation, though, isn't it? It could be. This has never actually played out in a new case law that Mr. Maples is aware of. Right, but we're talking about whose burden of proof it is. And you kept saying it's not uniquely within the realm of the defendant's knowledge. But where he would be licensed is uniquely within his knowledge. You would put the burden on the state to search all 50 states to determine who it is that licenses in every state, and then is the defendant licensed there? I don't think that would necessarily be the case. I mean, in the same way that the state does not have to search every single secretary of state's office to determine the status of a person's driving privileges in every state, they wouldn't necessarily have to do that in this situation either. Ms. Cantola, one other question before you sit down. Did the judge find that the testimony by L.L. where she said that she was not aware that the defendant had a medical license, didn't he find that sufficient to show that he wasn't a doctor, even though he found that they didn't have to prove that element? No, Your Honor. I don't believe the court's finding was that it was sufficient to prove that element. The court considered that she was unaware of him having any medical license. However, I don't think the court necessarily found that to be dispositive. I think that the court was likely in agreement with the state's argument that this was more of an affirmative defense. He found that it spoke to the issue, but not necessarily that it was sufficient proof of the issue. What if he said it was sufficient to prove the defendant was not licensed to correct?  Obviously, whether this person knew that the defendant was licensed or not would not be sufficient proof if you're considering this to be an element of the offense. Okay. Thank you. Unless this court has further questions, I'll briefly conclude. Because the state failed to prove each of the essential elements of the tattooing in the body of a minor offense, Mr. Maple's conviction should be reversed. Thank you. Thank you. Thank you. Your Honors. Counsel. My name is Ivan Albert Taylor, Jr., here representing the people. It's our belief that the defendant was properly found guilty of tattooing the body of a minor. To start with, the defendant's first argument stating that the people failed to prove that the defendant was not a licensed physician, first and foremost, that's not descriptive of the offense itself. The defendant gave you a standard review. Unfortunately, that's not the correct one. That statement she gave came from Lobsher from 1998. But since then, the Illinois Supreme Court has repeatedly refined the standard and most recently appealed to Tolbert in which they state that where the exception is descriptive of the offense, it must be negative in order to charge the defendant with the offense. However, if the exception may withdraw certain acts or certain persons from operation of the statute, it may not be negative. And going by that proper standard review and looking at the tattooing in the body of a minor statute, the only real conclusion to come to is that the phrasing, even in a person licensed to practice medicine in all its branches, is this removes certain persons from the operation of the statute. It's not descriptive of the offense. So it's not descriptive that people have to prove that the defendant was not a licensed physician. So you're saying it just removes physicians from the operation of the statute? Correct. Okay. If I may, if my colleagues would indulge me to have you skip from this issue onto the next issue, which is the H. You know, when somebody asked her if she told him her H, but nobody ever said when she told him that H. So there was an inference of knowledge. A reasonable inference, yes. When the minor was first starting her testimony, the prosecutor asked her her age currently. She said it was 17. Then we get to the quote that I have in my brief on page 6, in which the prosecutor took to the time that she was dating with the defendant, that three-week time period, and asked her if she told him her age, and she said yes, that it was 17. Now, the prosecutor could have been more eloquent in his word choice, but it doesn't make sense that the prosecutor was talking about a particular time period and then that her age, her answer for her age, refers to any other time period in that three weeks that she was dating with the defendant. So it possibly could have been better, but the reasonable inference is that she told the defendant that she was 17 during that three-week time period, that she was dating with him, and during that three-week time period actually received five tattoos from the defendant. Were there any other conversations between the defendant and this person? Were there any other conversations other than during that time period that were referred to in any form in the testimony? She mentioned that she has dated contact, but she didn't specify any real conversation. She didn't specify in the testimony what particular conversation she had with the defendant to the people's knowledge. Now, your comment relies on Nash with respect to knowledge of the age, and how do you distinguish that case? Nash. I'm sorry to say that people just can't recall Nash's point in time. It's a – it was not about age, but more of a timber thing when you're talking about the burden and knowingly, so the defendant's – the court – the State's failure to point that the defendant knowingly knew the age. I mean, you could say that they could make an inference. How do we – isn't it a knowing? Isn't it specific intent? Well, knowing can be – a certain set of evidence can be used to prove knowingly a knowledge, and this from the evidence – we have evidence from the minor herself who said that she told the defendant her age. But isn't the question when did she tell him, before or after the tattoos were done? That is the question. However, since we're looking at this – at this stage, that the burden – the burden is on the defendant because the State has the presumption that all reasonable evidence is in the State's favor. It's up to the defendant to show that even in the State's favor that this evidence is sufficient. However, you take all the evidence and the reasonable inferences in the State's favor, it shows that the minor told the defendant that she was 17 at the time that she received the tattoos. Thank you. Was there any more questions regarding the first argument as to whether or not the description of defense includes the licensing of the individual? Other questions? I don't have any. No, sir. I'll just make a conclusion. The people asked us what to confirm the defendant's conviction. The statute is not – in the statute, it is not a descriptive defense that the defendant is a licensed physician. It's merely an exception. That's a firm defense for the defendant to prove. And also, the State did show that the minor – the State provided evidence that the minor was 17 and that the defendant knew of this age when the tattoos were given to her. Thank you. Thank you. Thank you. Regarding the second evidentiary shortfall in this case, the State failed to prove beyond a reasonable doubt that Mr. Maples knowingly tattooed a person under the age of 18. The direct evidence presented in this case did not establish that Mr. Maples was consciously aware that L.L. was under 18 at the time he tattooed her. Her testimony established only that she told Mr. Maples her age at some point between the time she met him in July 2015 and the date of trial in December 2015. The prosecutor here was not merely ineloquent in the way that he questioned L.L. on this particular fact. The defense cross-examined her, correct? Yes, Your Honor. And she gave the same answer that she had told him that she was 17. Your Honor, she never clarified when she gave him that information. And that's the crux of the problem here. If the person cannot answer the question of whether she told Mr. Maples she was 17 before he tattooed her in the affirmative, then the State did not prove that element of the offense. Were all the tattoos at the same? There's more than one, right? Yes, Your Honor. Were they all at the same sitting or were they at various different times? It's my understanding, based on L.L.'s testimony, that they all occurred sometime within the three-week period that she was staying at his apartment. And, again, there's no indication of whether it was before that time frame or after that time frame that she informed him of her age. But my question is, were all the tattoos applied in one sitting during that three-week period or at various different times? It's my understanding that they were applied at potentially different times. The record's not very clear as to when each one was done. But just at some point over that three-week period, all of the tattoos were applied. But, again, there is no temporal orientation of when in that process L.L. informed Mr. Maples of her age. He may have finished giving her the last of the five tattoos and she may have said, oh, by the way, I'm 17. That is insufficient to show that he was aware of her age before he tattooed her. So, again, the prosecutor asked her how long she'd known Mr. Maples. She said she'd met him one night and stayed with him for three weeks and ever since she had known him. And that was in sometime in July of 2015 when she initially met him. And then the prosecutor asked, and at any point that you knew him, did you tell him how old you were? Yes, 17. So, again, the exchange between the prosecutor and L.L. was insufficient to temporally orient her statement that she told him she was 17. So it's unclear when he learned of that information. And there's no other evidence in this record from which the inference that he was aware of her age could be drawn. In fact, the circumstantial evidence in this case pointed in the opposite direction. How so? Your Honor, this person who was only slightly under 18 was living apparently without any parental oversight independently. So based on those facts, this isn't even a situation where one could say that Mr. Maples should have known or there were other facts available to him from which he could infer that she was 18. In fact, she was living as if she was the age of majority. That she had no parental oversight and was living at his apartment would suggest that she was not a minor. So it's not like her mom dropped her off at his apartment. There's no evidence of that, Your Honor. There's no evidence that she showed up in school uniform or something of that nature. There's absolutely nothing in this record from which you can infer that there was another basis for him to know that she was under the age of 18. Her mother was happy she was living with a doctor. I'm sorry? Married. And Ella's mother did testify in this case. And she did not give any further insights to what was going on with that situation or whether she had given permission for her daughter to be in this living arrangement or what have you. All we do know is that at some point between July 2015 and December 2015, Ella told Mr. Maples she was 17. We do not know if that occurred before he applied the tattoos. Your Honors, unless there are any further questions on this second issue, I will briefly conclude. Again, Mr. Maples asks that you reverse his conviction. Thank you. Thank you both very much. We will be in a brief recess. There will be a decision rendered in due time.